**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAVANNAH D. BYERS, *et. al.*, | : | Civil No. 1:20-CV-02110 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FINISHING SYSTEMS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

Before the court are Defendants Finishing Systems, Inc. ("Finishing

Systems"), Schweitzer & Crosson ("Schweitzer"), BFPE International ("BFPE"),

and Carlisle Fluid Technologies' ("Carlisle") (collectively, "Defendants") motions

to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docs. 19, 56, 83,

100.)  Also before the court are Finishing Systems and BFPE's motions to strike

pursuant to Federal Rule of Civil Procedure 12(f).  (Docs. 19, 83.)  Plaintiffs

Savannah D. Byers ("Byers") on behalf of her husband Eric. S. Byers, Cynthia L.

Barnes ("Barnes") on behalf of her husband Richard L. Barnes, Cody Ash ("Ash"),

Cody King ("King"), Dylan Aldridge ("Aldridge"), Mike Rowles ("Rowles"),

Samuel L. Smith ("Smith"), Tim Adams ("Adams"), and Walter P. Buryk, III

("Buryk") (collectively, "Plaintiffs") brought this action to recover damages

resulting from an explosion and fire in the Letterkenny Army Depot's

("Letterkenny") paint mixing room.  For the reasons that follow, the motions will be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As alleged in the amended complaint, on July 19, 2018, Plaintiffs, as civilian government employees, were working in Building 350 of Letterkenny located outside of Chambersburg, Pennsylvania.  (Doc. 3, ¶ 1.)  Building 350 is a warehouse used for the maintenance of military vehicles and housed a paint mixing room ("the Paint Kitchen"), which was used to store and mix paint in support of the paint booths located in the building.  (*Id.* ¶ 2.)  Plaintiffs allege that at approximately 7:20 a.m. and, by no fault of Plaintiffs, an explosion occurred in or around the Paint Kitchen in Building 350 that catastrophically injured Plaintiffs and killed Eric Byers and Richard Barnes.  (*Id.* ¶ 3.)

Plaintiffs aver that Finishing Systems sold the Paint Kitchen to Letterkenny in early 2013, including the ventilation system. (*Id.* ¶¶ 54, 59.)  They assert that Finishing Systems was the general contractor of the assembly, installation, activation, and/or testing of the Paint Kitchen.  (*Id.* ¶¶ 54–55.)  Plaintiffs also allege that Finishing Systems provided and/or was required to provide operator and maintenance training to Letterkenny workers, including Plaintiffs, for the Paint Kitchen, while Schweitzer provided and/or was required to provide operator training and maintenance training regarding the operation, maintenance, and/or

repair of the Paint Kitchen, and its component parts and/or systems.  (*Id.* ¶¶ 63–64.)  Furthermore, Plaintiffs assert that Sweitzer designed, manufactured, sold, supplied, assembled, installed and/or maintained the component parts, including piping, regulators, mixers, pumps and systems for the Paint Kitchen as well as performed the equipment design, set up, assembly, installation and/or testing of the Paint Kitchen's component parts and/or systems.  (*Id.* ¶¶ 56–57.)   In addition, BFPE purportedly sold, supplied, assembled, installed and/or maintained the Paint Kitchen's fire suppression system, and BFPE performed the assembly, installation, set up, activation, and/or testing of Paint Kitchen's fire suppression system.  (*Id.* ¶¶ 61–62.)

Plaintiffs also allege that a few weeks prior to the accident, the Paint Kitchen experienced leaks in its argon system, which Finishing Systems performed electrical work on previously.  (*Id.* ¶¶ 90–91.)  After installation in 2013, there were also numerous issues with the pumps in the Paint Kitchen, including pumps wearing out, clogging up and/or deteriorating at a significant rate as well as issues with the Paint Kitchen's ventilation and/or exhaust system.  (*Id.* ¶¶ 65–66.)  As a result of these issues, in 2017 and 2018, the Paint Kitchen was shut down and received modifications and repairs.  (*Id.* ¶ 67.)  During the shutdown, Finishing Systems performed the work in the Paint Kitchen and/or was the general contractor while Schweitzer supplied, installed, and/or maintained paint pumps, paint

pressure transducers and piping.  (*Id.* ¶¶ 69–70.)  Furthermore, BFPE allegedly modified, repaired, assembled, installed, and/or maintained the fire suppression systems in the Paint Kitchen during the shutdown.  (*Id.* ¶ 72.)  Plaintiffs also allege that during the shutdown, in early 2018, Carlisle designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce the component parts for the paint delivery system for the modification and upgrade of the Paint Kitchen.  (*Id.* ¶ 80.)

Finishing Systems also allegedly performed the electrical work related to the Paint Kitchen's modifications, including the wiring of the new electrical pumps and mixers, primer system, and paint delivery system, while Schweitzer and Carlisle performed the equipment set up, assembly and testing of the Paint Kitchen's new installed systems, including its paint delivery, primer, and electrical systems.  (*Id.* ¶¶ 84–85.)   Plaintiffs aver that Carlisle provided and/or was required to provide operator training and maintenance training to Letterkenny workers, including Plaintiffs, for the Paint Kitchen's newly installed systems.  (*Id.* ¶ 86.)  Plaintiffs further assert that during the 2018 modifications, Finishing Systems installed, modified and/or repaired the ventilation system, as well as performed electrical work on the Paint Kitchen's argon system.  (*Id.* ¶¶ 89, 91.)

According to the allegations in the amended complaint, Finishing Systems, BFPE, and Carlisle:

4

a. . . . engaged in the regular business of designing, assembling, manufacturing, selling, supplying, distributing, and/or placing into the stream of commerce paint delivery systems and component parts for paint mixing rooms, including the paint delivery system and component parts installed in the Paint Kitchen, which injured and killed Plaintiffs;

b. The product involved in the subject incident was marketed and/or placed in the general stream of commerce by [Defendants];

c. The product was expected to and did reach users without substantial change in the condition in which it was designed, assembled, manufactured, sold, supplied, distributed and/or placed into the stream of commerce;

d. The product was designed, assembled, manufactured, sold, supplied, distributed, and/or placed into the stream of commerce in the defective condition for the set forth reasons above.

(*Id.* ¶¶ 209(a)–(d), 312(a)–(d), 377(a)–(d).)  Plaintiffs also allege that the Paint Kitchen "was in a defective condition as: (1) the danger contained therein was unknowable and unacceptable to the average or ordinary consumer; and/or (2) a reasonable person would conclude that the probability and seriousness of the harm caused by the Paint Kitchen outweighed the burden or costs of taking precautions." (*Id.* ¶¶ 210, 313, 378.)

Further, Plaintiffs allege that on July 19, 2018, at approximately 7:00 a.m., Eric Byers, Richard Barnes, and Ash were all in the course and scope of their employment at Letterkenny when a flash fire started due to flammable vapors in the Paint Kitchen.  (*Id.* ¶¶ 105, 111.)  Plaintiffs assert that the Paint Kitchen's paint delivery system and/or primer system, including its electrical component parts

were not properly grounded and were experiencing leaks at the time of the flash fire. (*Id.* ¶¶ 112–113.) In addition, Plaintiffs allege that the Paint Kitchen's ventilation system was inadequate, not properly functioning, and/or malfunctioning at the time of the flash fire. (*Id.* ¶ 114.) The fire suppression system purportedly failed to activate, malfunctioned, and/or was not functioning properly, and the system never ejected foam and/or other fire retardant. (*Id.* ¶ 116.)

Plaintiffs allege that at the time of the explosion, Adams was approximately twenty feet from the Paint Kitchen when he heard the explosion. (*Id.* ¶ 144.) Adams then ran to the Paint Kitchen where he observed Eric Byers running out of the Paint Kitchen completely engulfed in flames and Richard Barnes on the floor of the building on fire. (*Id.* ¶ 145.) When Adams helped extinguish the flames and rescue Richard Barnes, he grabbed onto Richard Barnes' arms to move him, which resulted in the skin on Barnes' arms coming off due to the severity of his burns. (*Id.* ¶¶ 146, 148, 514–515.) In addition, King was also approximately twenty feet from the Paint Kitchen and standing outside of Paint Booth #44 when he heard the explosion. (*Id.* ¶¶ 152–153.) Immediately upon hearing the explosion, King turned around and observed flames everywhere as well as Eric Byers running out of the Paint Kitchen completely engulfed in flames, Richard Barnes on the floor of the building on fire, and Ash on fire with burns all over his body. (*Id.* ¶¶ 154–156.) Furthermore, Aldridge was talking to Buryk when he heard the explosion,

and he then immediately ran to the Paint Kitchen and observed Richard Barnes on fire. (*Id.* ¶ 159.) Aldridge also carried Eric Byers and Richard Barnes away from the fire. (*Id.* ¶¶ 161, 164, 478.) Immediately after the explosion occurred, Buryk witnessed Ash's and Eric Byers' catastrophic burns and helped carry Ash away from the fire. (*Id.* ¶¶ 179, 182, 505.)

Plaintiffs further allege that Rowles was approximately thirty feet from the Paint Kitchen in Paint Booth #58 when he heard the explosion. (*Id.* ¶¶ 167–168.) When he exited the Paint Booth, Rowles observed Richard Barnes and Ash engulfed in flames. (*Id.* ¶ 169.) Rowles also helped carry Ash and Eric away from the fire and helped extinguish the flames on Eric Byers. (*Id.* ¶¶ 170, 172, 487– 488.) Plaintiffs also allege that Smith was approximately twenty feet from Paint Kitchen and witnessed the explosion as well as Eric Byers, Richard Barnes, and Ash on fire. (*Id.* ¶¶ 175–176.)

According to the allegations in the amended complaint, Adams, King, Aldridge, Rowles, Smith, and Buryk were "in close proximity to the explosion, and had a sensory and contemporaneous observation of the explosion." (*Id.* ¶¶ 466, 474, 483, 493, 501, 510.) Furthermore, aforementioned Plaintiffs were in "personal danger of physical impact due to the explosion and fire that consumed the Paint Kitchen," and also "observed, witnessed and perceived the explosion that ultimately killed Messrs. Byer and Barnes and seriously injured Mr. Ash." (*Id.* ¶¶

467–468, 475–476, 484–485, 494–495, 502–503, 511–512.)  Plaintiffs also assert that Adams, King, Aldridge, Rowles, Smith, and Buryk were in the "zone of danger" as a result of Defendants' negligence.  (*Id.* ¶¶ 470, 479, 489, 497, 506, 516.)  Due to having to flee life-threatening explosions and witnessing the lethal and catastrophic injuries of Eric Byers, Richard Barnes, and Ash, above-stated Plaintiffs suffered and continue to suffer "severe emotional distress, psychological pain, emotional scarring, fear, anxiety, mental anguish, and other debilitating emotional, psychological and mental injuries, some or all of which manifested as a physical injury, the full extent of which may not have been realized."  (*Id.* ¶¶ 471, 480, 490, 498, 507, 517.)

Furthermore, Byers alleges that her decedent, Eric Byers, perished twelve hours after he suffered "devastating, catastrophic and fatal injuries" on July 19, 2017.  (*Id.* ¶ 543.)  Similarly, Barnes alleges that her decedent, Richard Barnes, perished twenty days after suffering "devasting, catastrophic and fatal injuries" on the aforementioned date.  (*Id.* ¶ 547.)  Byers and Barnes further allege that their decedents "[were] caused to suffer devastating pain and suffering and traumatic, intangible losses; [they] suffered anxiety, mental anguish and fear of impending death from fire and smoke; [they] sustained a loss of future earnings and a loss of earning capacity; [they] sustained a permanent loss of enjoyment of life and loss of life's pleasures; as a result of [their] premature death [they were] and will be

forever prevented from performing [their] usual duties, occupations and avocations, all to [their] great loss and detriment by reason of the carelessness, recklessness, and gross negligence of Defendants." (Doc. 3, ¶¶ 544, 548.)

Plaintiffs filed a complaint against eighteen Defendants on June 23, 2020 with the Philadelphia County Court of Common Pleas, alleging claims for negligence, strict liability, and wrongful death. (Doc. 1-9.) This case was removed to the Eastern District of Pennsylvania on June 30, 2020. (Doc. 1.) On July 10, 2020, Plaintiffs filed an amended complaint. (Doc. 3.) This case was transferred to this court on November 13, 2020. (Doc. 188.) In response to Plaintiffs' amended complaint, certain Defendants filed the motions to dismiss that are before the court along with briefs in support. Finishing Systems filed its motion and brief on July 24, 2020, Schweitzer filed on August 10, 2020, BFPE filed on August 18, 2020, and Carlisle filed on August 21, 2020. (Docs. 19, 56, 83, 100.) Finishing Systems and BFPE also filed motions to strike on those dates. (Docs. 19, 83.) Plaintiffs timely filed briefs in opposition. (Docs. 51-2, 119-1, 136-1, 154-2.) Thus, these motions are ripe for review.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1442, as the present case was removed to the Eastern District of Pennsylvania and subsequently transferred to this court. Further, venue is appropriate pursuant to 28 U.S.C. § 1391.

STANDARDS OF REVIEW

**A. Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6)**

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

**B. Motion to Strike Under Federal Rules of Civil Procedure 12(f)**

Under Federal Rule of Civil Procedure 12(f), a party can move a district court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." This rule is "designed to reinforce the requirement in Rule

8 . . . that pleadings be simple, concise, and direct."  5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2020 update).  To that end, the purpose of any motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted).

Motions to strike should not be used to persuade a court to determine disputed questions of law.  *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993) (citations omitted).  They also "may not serve as an avenue to procure the dismissal of all or part of a complaint."  *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612, 624 (W.D. Pa. Oct. 21, 2013), vacated in part on reconsideration, 2014 WL 3735631 (3d Cir. July 28, 2014) (citing *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 530–31 (D.N.J. 2012)).

The burden rests with the moving party to show that the challenged matter should be stricken.  *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019).  Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f).  "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)).

"Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted).  And "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court."  *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).  Motions to strike are "generally disfavored and will be denied unless the allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'"  *Wirt v. Bo-Ton Stores, Inc.*, 134 F. Supp. 3d 852, 857 (M.D. Pa. 2015) (quoting *River Rd. Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *2 (E.D. Pa. May 23, 1990)).

## DISCUSSION

### A. Issues Resolved Via Stipulation

Some of Defendants' arguments have been resolved via stipulation.  For instance, the parties stipulated that all references to and/or claims for punitive damages, gross negligence, recklessness, and outrageous acts be stricken and dismissed without prejudice.  (Docs. 80, 105, 108, 160, 176.)  Additionally, Plaintiffs agreed to strike references for attorneys' fees in the amended complaint. (Doc. 19, p. 5, n.1.)[1]  Furthermore, Plaintiffs and Finishing Systems agreed that paragraph 205(ppp) be stricken and dismissed without prejudice.  (Docs. 80, 105.)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Plaintiffs and BFPE also agree that paragraph 373(g) be stricken and dismissed without prejudice.  (Doc. 108.)  Thus, the court will not address these issues although they were briefed in the motions to dismiss.  20-cv-

### B. Defendants' Motions to Dismiss Plaintiffs' Negligent Infliction of Emotional Distress Claims will be Denied.

The court will first address Defendants' arguments that Plaintiffs' claims for negligent infliction of emotional distress ("NIED") be dismissed.  In Pennsylvania, a plaintiff may recover for NIED if he proves one of four theories: (1) the defendant had a contractual or fiduciary duty to the plaintiff; (2) the plaintiff suffered a physical impact; (3) the plaintiff was in the zone of danger and at risk of an immediate physical injury; or (4) the plaintiff perceived a tortious injury to a close relative.  *Doe v. Phila. Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000), *aff'd*, 767 A.2d 548 (Pa. 2001).  A plaintiff must also allege a physical manifestation of the emotional distress purportedly suffered. *Thompson v. United States*, No. CV 16-3287, 2017 WL 2972679, at *3 (E.D. Pa. July 12, 2017) (citing *Houston v. Texaco, Inc.*, 538 A.2d 502, 504 (Pa. Super. Ct. 1988)).

Defendants argue that Plaintiffs Adams, King, Aldridge, Bowles, Smith, and Buryk failed to sufficiently plead facts to prevail under any of the four theories, and specifically the zone of danger theory.  (Doc. 19, pp. 7–8; Doc. 56, p. 5; Doc. 83-1, p. 4; Doc. 100, p. 11.)  Regarding the zone of danger theory, Defendants

argue that Plaintiffs failed to allege that they were in personal danger of physical impact because of the direction of the alleged negligent force directed toward them as well as failing to assert they feared any physical injury. (Doc. 19, pp. 8–9; Doc. 56, p. 6; Doc. 83-1, p. 6; Doc. 100, p. 13.)  Finishing Systems, Schweitzer, and Carlisle argue that the fact that Plaintiffs allege their locations were at least twenty feet away from the explosion when it occurred and they ran toward the explosion, proves they did not have the subjective fear of physical injury.  (Doc. 19, pp. 9–11; Doc. 56, pp. 5–6; Doc. 83-1, p. 6.)  In addition, BFPE contends that Plaintiffs do not allege any facts that suggest there was a close or familial relationship between any of the Plaintiffs.  (Doc. 83-1, p. 6.)  Finally, Defendants argue that Plaintiffs failed to allege a specific physical manifestation of the emotional distress.  (Doc. 19, pp. 6–7; Doc. 56, p. 7; Doc. 83-1, p. 10; Doc. 100, pp. 12–13.)

Contrary to Defendants' contentions, Plaintiffs Adams, King, Aldridge, Rowles, Smith, and Buryk argue that they sufficiently pleaded facts to recover under the zone of danger theory.  (Doc. 51-2, pp. 10–11; Doc. 119-1, pp. 9–10; Doc. 136-1, pp. 9–10; Doc. 154-2, p. 9.)  Plaintiffs argue that any reasonable, objective person would fear physical injury in a situation where individuals are standing mere feet away from a paint mixing room when it exploded outwards, ejected Ash and Richard Barnes out into Building 350, and subsequently resulted in a raging fire.  (Doc. 51-2, pp. 10–11; Doc. 119-1, p. 10; Doc. 136-1, p. 12.)

14

Furthermore, Plaintiffs contend that they sufficiently asserted physical manifestations of emotional suffering to sustain a cause of action of NIED under Pennsylvania law.  (Doc. 51-2, p. 13; Doc. 119-1, pp. 13–14; Doc. 136-1, pp. 15–16.)

Because Plaintiffs only plead the zone of danger theory in their amended complaint, the court will not address the three other potential theories of liability. Under Pennsylvania law, a plaintiff sustains a cause of action under the zone of danger theory where the plaintiff was: (1) "in personal danger of physical impact because of the direction of a negligent force against him" and (2) "plaintiff actually did fear the physical impact."  *Covello v. Weis Markets, Inc.*, 610 A.2d 50, 52 (Pa. Super. Ct. 1992) (citing *Niederman v. Brodsky*, 261 A.2d 84, 90 (Pa. 1970)).

Adams, King, and Smith allege that they were twenty feet away from the explosion when it occurred while Rowles alleges that he was thirty feet away. (Doc. 3, ¶¶ 144, 152, 167, 175.)  Adams, King, Rowles, Smith, Buryk, and Aldridge assert that they were in close proximity to the explosion.  (*Id.* ¶¶ 466, 474, 483, 493, 501, 510.)  Plaintiffs further allege that Richard Barnes and Ash were thrown approximately fifteen feet out of the Paint Kitchen.  (*Id.* ¶ 118.) Given these allegations and reading the amended complaint in a light most favorable to Plaintiffs, it can be reasonably inferred that Adams, King, Rowles, Smith, Buryk, and Aldridge were in personal danger of physical impact of the

explosion of the Paint Kitchen and the subsequent fire. *Cf. Vincenzi v. Morgan,*

No. 2108 EDA 2015, 2016 WL 6820473, at *3 (Pa. Super. Ct. 2016) (explaining

that plaintiff could have survived a motion for summary judgment if he pleaded he

was in the front yard, kitchen, or first floor of apartment when a vehicle crashed

into his apartment).

Furthermore, each Plaintiff alleged that they heard, observed, witnessed and

perceived the explosion that ultimately killed Eric Byers and Richard Barnes and

seriously injured Ash. (Doc. 3, ¶¶ 468, 476, 485, 495, 503, 512.) These

allegations are sufficient to infer that Plaintiffs were aware of the explosion when it

occurred and feared physical impact. *See id.* (stating that plaintiff could not have

feared physical impact because he did not know of the vehicle crashing until after

it happened).

The court further agrees with Plaintiffs that they sufficiently pleaded

physical manifestations of emotional distress. Adams, King, Aldridge, Rowles,

Smith, and Buryk allege that they "suffered and continue[] to suffer severe

emotional distress, psychological pain, emotional scarring, fear, anxiety, mental

anguish, and other debilitating emotional, psychological and mental injuries, some

or all of which manifested as a physical injury, the full extent of which may not

have yet been realized." (Doc. 3, ¶¶ 471, 480, 490, 498, 507, 517.) Given these

allegations, Plaintiffs have alleged enough to survive the instant motions to

dismiss.  *See Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992) (finding that alleging depression, nightmares, stress, and anxiety were sufficient physical manifestations of emotional suffering).  Thus, Plaintiffs' NIED claims will not be dismissed at this stage of litigation.

### C. Plaintiffs' Strict Liability Claims Will Not Be Dismissed.

The court will next address Finishing Systems, BFPE, and Carlisle's arguments that Plaintiffs' strict liability claims for the manufacturing and design defect of the Paint Kitchen should be dismissed.  To establish a claim for strict products liability, Pennsylvania has adopted the Restatement (Second) of Torts § 402A, which states:

> *§ 402A Special Liability of Seller of Product for Physical Harm to User or Consumer*
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby cause to the ultimate user or consumer, or to his property if,
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

The Pennsylvania Superior Court has distilled § 402A into five elements: "(1) a product; (2) a sale of that product; (3) a user or consumer; (4) a defective condition, unreasonably dangerous; and (5) causation–that the product caused physical harm to the ultimate user or consumer, or to his property." *Schriner v. Pa. Power & Light Co.*, 501 A.2d 1128, 1132 (Pa. Super. Ct. 1985). To prove that a product is in a defective condition, a plaintiff may show: either "(1) the danger is unknowable and unacceptable to the average or ordinary consumer [consumer expectations test], or that (2) a reasonable person would conclude that the probability and seriousness of harm caused by the product outweigh the burden or costs of taking precautions [risk-utility test]." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 355 (Pa. 2014).

Finishing Systems, BFPE, and Carlisle argue that Plaintiffs' amended complaint merely recites the elements and fails to claim any defect under the Restatement Second of Torts § 402A. (Docs. 19, 83, 100.) Finishing Systems further contends that Plaintiffs failed to plead that the Paint Kitchen was defective at the time it left the hands of Finishing Systems. (Doc. 19, p. 9.) Additionally, Carlisle argues that Plaintiffs have not differentiated between the products supplied by each defendant. (Doc. 100, p. 14.)

In turn, Plaintiffs argue that they stated a valid strict liability claim against Defendants because they allege facts that reasonably lead to the conclusion that the Paint Kitchen was defective under both the consumer expectation test and the risk-utility test.  (Doc. 51-2, p. 18; Doc. 136-1, p. 22; Doc. 154-2, p. 12.)  Plaintiffs also argue that discovery will reveal the nature of the Paint Kitchen's defects.  (Doc. 51-2, p. 19; Doc. 136-1, p. 22; Doc. 154-2, p. 12.)

After reviewing the parties' arguments, the court concludes that Plaintiffs have sufficiently pleaded facts to survive a motion to dismiss.  In this case, beyond simply alleging the elements required in *Schriner*, Plaintiffs have pleaded sufficient facts to suggest that the Paint Kitchen was in a defective condition.  Specifically, Plaintiffs allege: "Upon information and belief, after installation of the Paint Kitchen in 2013, there were numerous issues and/or operational issues with the pumps in the Paint Kitchen, including pumps wearing out, clogging up and/or deteriorating at a significant rate," and "[a]s a result, upon information and belief, in late 2017, the Paint Kitchen was shut down for several months to replace component parts of the Paint Kitchen, including paint pumps, paint agitators and paint pressure transducers."  (Doc. 3, ¶¶ 65, 67.)  Plaintiffs also allege, "upon information and belief, a few weeks prior to the accident, the Paint Kitchen experienced leaks in its argon system."  (*Id.* ¶ 90.)  These allegations are sufficient

to support the inference that the Paint Kitchen contained some defect that led to the explosion and fire.

Furthermore, the court is satisfied that sufficient facts are plead to warrant the case proceeding through discovery. *See Barton v. Lowe's Home Centers, Inc.*, 124 A.3d 349, 356 (Pa. Super. Ct. 2015) ("A more precise identification of the design defect, manufacturing defect or failure-to-warn defect is a matter for discovery and reports from experts (and perhaps a fire marshal)."). Discovery is likely to resolve Carlisle's contention that Plaintiffs failed to distinguish the products supplied by each Defendant. Lastly, regarding Finishing Systems' argument that Plaintiffs failed to plead that the Paint Kitchen was defective at the time it left Finishing Systems' hands, Finishing Systems does not cite any legal authority stating that Plaintiffs have the burden of pleading this element in order to survive a motion to dismiss. Therefore, Plaintiffs' strict liability claims will not be dismissed.

### D. BFPE's Motion to Dismiss the Claims for Damages for Loss of Life's Pleasures will be Granted in Part and Denied in Part.

In Pennsylvania, a plaintiff may recover for loss of life's pleasures if he survives the accident giving rise to the cause of action. Separate claims for loss of life's pleasures are not recoverable in a wrongful death and survival action. *Willinger v. Mercy Cath. Med. Ctr. of Se. Pa., Fitzgerald Mercy Div.*, 393 A.2d 1188, 1190 (Pa. 1978). Furthermore, a plaintiff may recover for the pain and

suffering that may flow from loss of life's pleasures for the period of time between the accident and the decedent's death. *Id.* at 1191.

BFPE argues that Byers and Barnes' allegations that they are entitled to damages for their respective decedents' losses of life's pleasures should be dismissed with prejudice because Pennsylvania courts do not recognize a claim for loss of life's pleasures or loss of life itself occasioned by a death. (Doc. 83-1, p. 18.) In contrast, Byers and Barnes argue that their respective decedents suffered a painful and agonizing death some time *after* the accident and are therefore able to recover for loss of life's pleasures from the time of injuries until the decedents' ultimate deaths. (Doc. 136-1, pp. 25–26.) Specifically, Eric Byers suffered a painful and agonizing death twelve hours after he was injured, while Richard Barnes died twenty days after the accident. (*Id.* at 25.)

In the amended complaint, Byers and Barnes allege that their decedents "[were] caused to suffer devastating pain and suffering and traumatic, intangible losses," and "[they] sustained a permanent loss of enjoyment of life and loss of life's pleasures." (Doc. 3, ¶¶ 544, 548.) In accordance with Pennsylvania law, Byers' and Barnes' claims for loss of life's pleasures will be dismiss with prejudice. However, because Byers and Barnes allege that their decedents perished twelve hours and twenty days after the explosion of the Paint Kitchen,

respectively, their claims for pain and suffering will not be dismissed.  (*Id.* ¶¶ 543,

547.)

### E. Finishing Systems and BFPE's Motions to Strike Plaintiffs' Photographs will be Denied.

Finishing Systems and BFPE move to strike the photographs in Plaintiffs'

amended complaint because they are not "statements" or "written statements" and

cannot "state" or "allege" a fact to which Defendants must respond.  (Doc. 19,

p. 13; Doc. 83-1, p. 23.)  Finishing Systems and BFPE further contend that the

photograph of Ash is "particularly prejudicial," and is not susceptible to a response

by Finishing Systems and BFPE as required by Rule 8(b) of the Federal Rules of

Civil Procedure.  (Doc. 19, p. 13; Doc. 83-1, p. 23.)  Finishing Systems further

explains that the photograph of Ash is prejudicial in that it is a graphic depiction of

him.  (Doc. 19, p. 13.)  In contrast, Plaintiffs argue that the motion to strike the

photographs should be denied because Finishing Systems and BFPE do not allege

any risk of confusion or prejudice regarding the images of Building 350 or the

Paint Kitchen after the explosion and fire and merely state that the photograph of

Ash is "particularly prejudicial."  (Doc. 51-2, p. 28; Doc. 130, p. 23.)

The court will deny the motions to strike the photographs.  To begin, "courts

have generally declined to 'expend time and effort pruning or polishing the

pleadings.'"  *Ware v. Hosp. of the Univ. of Pa.*, No. 2:14-CV-00014, 2015 WL

5729243, at *4 (E.D. Pa. Sept. 30, 2015) (quoting *Zaloga v. Borough of Moosic*,

No. 3:10-CV-2604, 2013 WL 1909538, at *6 (M.D. Pa. May 8, 2013)).  Finishing

Systems and BFPE have failed to indicate any risk of confusion or prejudice

regarding the photographs other than the one of Ash.  *Id.* (denying motion to strike

because defendants did not allege any risk of confusion or prejudice).  Although

the photograph of Ash may be "graphic," Finishing Systems and BFPE do not

explain with specificity why the picture of Ash would be prejudicial.  Further, the

pictures do not confuse the issues in the case, and Finishing Systems and BFPE are

able to respond to the allegations in the complaint.  For these reasons, Finishing

Systems' and BFPE's motions to strike will be denied.

### F.  BFPE's Motion to Strike Certain Paragraphs of the Amended Complaint will be Denied.

BFPE moves to strike certain paragraphs of Plaintiffs' amended complaint

pursuant to Federal Rule of Civil Procedure 12(f).  (Doc. 83-1, pp. 21–23.)  BFPE

contends that paragraphs 93 through 104 of the amended complaint should be

stricken because they are "immaterial, impertinent, and irrelevant" since these

paragraphs outline a business owner's duties on a work site that are inapplicable to

the named Defendants.  (*Id.* at 22–23.)  Contrary to BFPE's contentions, Plaintiffs

argue that the paragraphs are directed at all eighteen Defendants in the lawsuit, and

each Defendant is a business owner that is "responsible for the design,

manufacture, construction, maintenance, inspection and/or repair of the Paint Kitchen."[2]  (Doc. 136-1, p. 28.)

The court reiterates, that motions to strike are not favored and will be denied "unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." *Miller v. Grp. Voyagers, Inc.*, 912 F. Supp. 164, 168 (E.D. Pa. 1996)) (citing *N. Penn Transfer, Inc. v. Victaulic Co. of Amer.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)).  In the present case, the court sees no reason to strike paragraphs 93 through 104 because BFPE does not identify prejudice that may occur as a result of denying its motion.  *See id.* (stating that defendant identifies no prejudice that will result if the court denies its motion).  Furthermore, the court is unable to find that the paragraphs at issue contain "no possible relation" to the instant matter.  *See Abu-Jamal v. Kerestes*, No. 3:15-CV-00967, 2016 WL 3180178, at *1 (M.D. Pa. June 3, 2016) (explaining that the court is unwilling to find that the challenged averments fail to relate to any claims at the motion to dismiss stage of litigation).  Thus, BFPE's motion to strike will be denied.

---

[2] The court notes that since the briefing of the motions to dismiss, the number of defendants in this case has been reduced to seven through stipulations of dismissal.

## Conclusion

For the foregoing reasons, Defendants Finishing Systems, Schweitzer, and Carlisle's motions to dismiss will be denied, and Defendant BFPE's motion to dismiss will be granted in part and denied in part.  (Docs. 19, 56, 83, 100.) Further, Finishing Systems and BFPE's motions to strike will also be denied. (Doc. 19, 83.)  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  May 17, 2022